# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | No. 3:07-cr-73 (CFD) |
| | : | |
| VIDA DEAS | : | |
| | : | |
| | : | |

## RULING ON DEFENDANT'S RENEWED MOTION TO SUPPRESS TANGIBLE EVIDENCE

On April 10, 2007, a federal grand jury in Hartford returned a 25-count indictment charging thirteen defendants, including Vida Deas, with various violations of federal law, including 21 U.S.C. §§ 841 and 846.[1] Deas is now charged in a five-count superseding indictment returned on October 16, 2008, as follows: count one alleges that Deas conspired to possess with the intent to distribute and to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A); count two alleges that Deas conspired to possess with the intent to distribute and to distribute 500 grams or more of powder cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B); counts three and four allege that Deas possessed with the intent to distribute and distributed cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); count five alleges that Deas possessed with the intent to distribute cocaine base, also in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

Deas renewed his motion to suppress tangible evidence on November 12, 2008 [Dkt. # 569, memorandum of support at Dkt. # 570]. This motion is based on the failure of the warrant

---

[1] This indictment has not been dismissed; the other defendants in the original indictment have pleaded guilty.

to authorize, on its face, the execution of the search during nighttime hours, as required by Federal Rule of Criminal Procedure 41. An evidentiary hearing was held on November 19, 2008.[2] The following constitutes the court's findings of fact and conclusions of law.

**I.     Background**

On March 27, 2007, at 10:55 p.m., law enforcement officers executed a search warrant at Deas's home at 360A Wethersfield Avenue in Hartford, Connecticut and seized several items including a jacket containing cocaine base, a cell phone, and various documents allegedly belonging to Deas. The search warrant signed by Magistrate Judge Martinez did not authorize, on its face, the execution of the search after 10:00 p.m. However, the affidavit prepared by Special Agent Robert E. Bornstein in support of the search warrant included a request for permission to execute the warrant during nighttime hours.[3]

Agent Bornstein added the request for permission to execute the search warrant after 10:00 p.m. to the original version of the affidavit presented to Judge Martinez after Judge Martinez first met with Agent Bornstein on Monday, March 26, 2007 to review the application

---

[2]FBI Special Agent Robert Bornstein was the only witness at that hearing.

[3]This request is in paragraph 97 of the affidavit, which states: "Your Affiant further requests that authorization be granted to execute the search and seizure warrants after 10:00 p.m. Your Affiant submits that the requested search and seizure warrants will be executed after the arrest of **BYRON TURNER**, which your Affiant anticipates will occur during the evening of March 27, 2007. If for some reason there is a delay in **TURNER**'s arrest, it may be difficult for law enforcement officers to adequately respond and execute all of the search warrants prior to 10:00 p.m. on March 27. Moreover, as noted above in paragraph 88 of this Affidavit, your Affiant is aware that **TURNER** and his associates are keenly aware to destroy evidence if they believe that police may subsequently locate and seize items of contraband. Your Affiant thus submits that it is imperative that law enforcement execute the search and seizure warrants requested in this Affidavit contemporaneously with the arrest of **BYRON TURNER**, in order to minimize the risk that evidence will be discarded or destroyed."

for the search and arrest warrants. Noting that law enforcement planned numerous arrests and searches to occur on one afternoon, following the arrest of one individual, Judge Martinez inquired whether the execution of the search and arrest warrants would likely result in a search after 10:00 p.m. Special Agent Bornstein indicated to Judge Martinez that the schedule was likely to result in such a need, and then revised the affidavit at the suggestion of Judge Martinez to include the request as well as the justification for execution after 10:00 p.m. Special Agent Bornstein returned to Judge Martinez with the revised affidavit, but did not change the proposed warrant to reflect that change. An Assistant U.S. Attorney had prepared the proposed warrant, but did not modify it to reflect the revised affidavit's request for nighttime execution of the search. Special Agent Bornstein did not notice that the proposed warrant did not include a change to reflect the request for execution after 10:00 p.m., and did not realize (on March 27, 2007) that such an authorization should have been reflected on the warrant's face; it was his belief that an attached affidavit requesting nighttime authorization (along with his conversations with Judge Martinez) was sufficient to satisfy the requirements of Rule 41. Special Agent Bornstein was not aware of the specific requirement in Fed.R.Crim.P. 41(e)(2)(A)(ii) that the search warrant expressly authorize a search after 10:00 p.m. Judge Martinez reviewed the revised affidavit and signed the proposed warrants.

Special Agent Bornstein testified that he presented five search warrant applications and seven arrest warrant applications to Judge Martinez, all of which were authorized.[4] The

---

[4] The affidavit submitted to Judge Martinez actually supported five search warrants and arrest warrants for eight (not seven) individuals. During his testimony, Agent Bornstein inadvertently omitted the arrest warrant for Karvasik Caldwell. In addition, Agent Bornstein's testimony referred to an arrest warrant for Roberto Stewart, when support for that warrant was not included in the affidavit, while failing to mention the arrest warrant for Lashawn Smith,

execution of these warrants began at approximately 6:30 p.m. on March 27, 2007.  Four law enforcement teams of eight to ten members each executed all of the search warrants and five arrest warrants on March 27, 2007.  The execution of the warrants for Deas began at 10:55 p.m.  During this same time period, Special Agent Bornstein was also involved with terminating the electronic and physical surveillance of the several co-defendants.

Special Agent Bornstein was not present at the execution of the search and arrest warrants for Deas, but each member of the "team" that arrested Deas and searched his residence reviewed not only the warrants but the affidavit as well.

**II.    Discussion**

Rule 41 states that "[t]he warrant must command the officer to . . . execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time." Fed.R.Crim.P. 41(e)(2)(A)(ii).  Courts have repeatedly held that suppression is rarely the proper remedy for a Rule 41 violation; only a "fundamental" violation of Rule 41, i.e. one that "renders the search unconstitutional under traditional fourth amendment standards," requires automatic suppression.  United States v. Williamson, 439 F.3d 1125, 1132-33 (9th Cir. 2006) (citing United States v. Calandra, 414 U.S. 338, 348 n.6 (1974); United States v. Johnson, 660 F.2d 749, 753 (9th Cir. 1981); United States v. Martinez-Garcia, 397 F.3d 1205, 1213 (9th Cir.), cert. denied, 546 U.S. 901 (2005)); United States v. Smith, 340 F.Supp. 1023, 1029 (D. Conn. 1972).  The Second Circuit has articulated two additional circumstances under which a violation of Rule 41 requires suppression of the evidence: (1) the defendant was prejudiced, in the sense

---

which was included in the affidavit. Agent Bornstein did not have those documents before him when he testified at the hearing on this motion.  These minor variations are understandable, given the complexity of the material.

that the search might not have occurred or would not have been so abrasive if the Rule had been followed; or (2) there is evidence of "intentional and deliberate disregard of a provision in the Rule." United States v. Burke, 517 F.2d 377, 385-87 (2d Cir. 1975). See also Hudson v. Michigan, 547 U.S. 586 (2006) (violation of the "knock-and-announce" rule does not require suppression of evidence found in a search).

The defendant concedes that there is no basis for exclusion on the account of "prejudice" but argues both that federal agents intentionally and deliberately disregarded the Rule, and that a Fourth Amendment violation occurred as a result of the execution of the search at night.

**A.  Intentional and Deliberate Disregard for the Rule**

"Deliberate and intentional disregard" for Rule 41 has been equated with "bad faith" or an "intent to flout the rule." Williamson, 439 F.3d at 1134 (internal citations omitted). "Technical errors" are not considered "deliberate and intentional disregard" of the Rule that would justify suppression; if that were the case, *all* mistakes would be intentional and deliberate as long as the underlying action was taken volitionally; this would "run counter to the concept that suppression is generally not the appropriate remedy for a Rule 41 violation. Id. at 1134 n.7 (internal citations omitted). Where the agent acts in good faith in executing what he or she believes to be the Rule, he or she has not acted in deliberate disregard of it; thus, suppression is not appropriate if the officer's actions result in no prejudice to the defendant and the error does not rise to the level of a constitutional violation. Id. at 1134.

Agent Bornstein provided his explanation of his good faith effort to comply with what he believed to be the requirements of Rule 41. The Court credits his testimony and thus finds no deliberate and intentional disregard of Rule 41 in this case by Agent Bornstein or the law

enforcement officers who executed the search warrant.

**B.     Prejudice**

"Prejudice" means that the "search would not have occurred or would not have been so abrasive if law enforcement had followed the Rule." Williamson, 439 F.3d at 1133 (internal citations omitted); see also Burke, 517 F.2d at 385. Deas does not contend that the search would not have occurred or that the search would have been less abrasive had the government followed Rule 41. However, he did argue in his brief that the "late hour at which the search was conducted unnecessarily added to . . . [the] fear and anxiety [of Deas's girlfriend Aretha Cook and of her four minor children]," who lived at the searched residence. Although the execution of the search at night may have added to the fear and anxiety experienced by Ms. Cook and her children, there is no evidence suggesting that nighttime execution would not have been granted by Judge Martinez; in fact, the opposite is true: Agent Bornstein testified that Judge Martinez specifically asked about and authorized a nighttime search in this case, even though the signed search warrant was not formatted in a manner consistent with the language in Rule 41. Therefore, compliance with the technical requirements of the rule would not have alleviated the abrasiveness of the search, and Deas was not prejudiced by the failure to observe this technical requirement.

**C.     Fourth Amendment Reasonableness**

The fact that a private dwelling is entered at night has "constitutional significance." United States v. Smith, 340 F. Supp. 1023, 1029 (D. Conn. 1972). A nighttime entry to search a home or seize a person is an "extremely serious intrusion" that presents a special threat to privacy. Cipes v. Graham, 386 F.Supp.2d 34, 37 (D. Conn. 2005) (citing Coolidge v. New

Hampshire, 403 U.S. 443, 477 (1971)).  What would be "reasonable" by day under the Fourth Amendment is not necessarily the same as what would be reasonable at night, and "intrusion into an occupied home in the middle of the night is plainly a greater invasion of privacy than entry during the day."  Smith, 340 F. Supp. at 1029.  A determination that requires a balancing of "the need to search against the invasion which the search entails" is required.  Id. (internal citation omitted).

The Court finds that the Government acted reasonably in obtaining the warrant.  Agent Bornstein made a good faith effort to comply with the requirements of the Constitution and of Rule 41 as he understood them: he sought the judgment of a disinterested judicial officer; he submitted with the warrant an affidavit requesting permission for nighttime execution of the search; finally, he waited until he believed authorization had been given and the warrant, which referred to the affidavit, was signed before executing the search.  Therefore the technical failure to change the face of the search warrant does not rise to the level of a constitutional violation.

Deas's challenge to the constitutional validity of the nighttime search appears to rest on the assertion that such a search was not authorized by the warrant; however, a challenge could be raised against the reasonableness of a nighttime search even if such a search were authorized by the warrant.  Assuming such a challenge, the Court performs the balancing test of Smith (weighing "the need to search against the invasion which the search entails") and in doing so reviews Judge Martinez's finding of probable cause for a warrant under the "totality of the circumstances" test articulated in Illinois v. Gates.  462 U.S. 213, 232 (1983).  Under this test, the duty of a reviewing court "is simply to ensure that the magistrate had a substantial basis for ... concluding that probable cause existed."  United States v. Smith, 9 F.3d 1007 (2d Cir. 1993)

(internal citations omitted).

Agent Bornstein testified that the search warrant was submitted to Judge Martinez along with many other arrest and search warrants on March 26, 2007, in anticipation of a "take down" of these individuals that was scheduled to take place the following day. These arrests and searches related to an investigation of drug distribution activities of Byron Turner and stemmed from a two-month-long wiretap of Turner and several other individuals allegedly involved in the drug distribution activities. The affidavit in Paragraph 97 stated that the need for a nighttime execution of the search warrant might arise if there was a delay in Turner's arrest, which would prevent law enforcement agents from executing all of the search warrants before 10:00 p.m. Bornstein believed that these warrants might need to be executed at night because it was "imperative that law enforcement execute the search and seizure warrants requested in this Affidavit contemporaneously with the arrest of BYRON TURNER, in order to minimize the risk that evidence will be discarded or destroyed."

It should also be noted that Rule 41 defines "Daytime" as "the hours between 6:00 a.m. and 10:00 p.m." Fed.R.Crim.P. 41(a)(2)(B). The search in question actually took place at 10:55 p.m., less than one hour after the time at which a warrant that did not specifically authorize a nighttime search would have been sufficient for purposes of Rule 41. Compare Smith, 340 F. Supp. 1023 (warrant obtained after taking defendant into custody and authorizing 3:00 a.m. search of defendant's home, and actual search conducted at 4:15 a.m., while his wife and children were home, held constitutionally unreasonable). Under the totality of the circumstances, the need for a nighttime execution of the search warrant outweighed the invasion of privacy suffered by the residents of 360A Wethersfield Avenue, and a search at 10:55 p.m. was not

unreasonable under the traditional standards of the Fourth Amendment.

**III.     Conclusion**

The defendant's renewed motion to suppress tangible evidence [Dkt. # 569] is denied.

SO ORDERED this 24th day of November 2008, at Hartford, Connecticut.

      /s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**